GEORGE W. HILL AND MEHITABLE, HIS WIFE *v.* THE ROCKINGHAM BANK, WILLIAM H. DEVERSON & AL.

In the case of a bequest to one during life, and after his death, to the testator's living children, the words of survivorship refer to the death of the tenant for life, or the time of distribution; and the children living at that period will take to the exclusion of the representatives of such as have died since the death of the testator.

THIS is a bill in equity, brought by the only surviving child of the late Joshua Deverson, joined with her husband, against the Rockingham Bank and the children of a deceased son of the said Joshua, Joshua Deverson, jr. ; and the cause is heard upon the bill and answer. The case, which also appears in 44 N. H. 567, is sufficiently stated in the opinion of the Court.

*Rollins*, for plaintiffs.

*Webster*, for defendants.

BELLOWS, J. From the bill and answer it appears, that Joshua Deverson, by his will, which was proved and allowed, October 26, 1826, gave to his wife, Mary Deverson, one thousand dollars in cash—"the money to be laid out in good bank stock, for her to have the interest of the above, her life time, after her decease to be equally divided among *his* living children" ; that the widow was appointed executrix of the will, and, on the 18th day of March 1828, settled an account of her administration in the Probate Court, showing a balance, in her hands, of $2198.-82, but that no other account of her administration has since been settled ; that, in May 1843, there was purchased, in the name of the heirs of Joshua Deverson, ten shares in the stock of the Rockingham Bank, at the par value of $50,00 per share, and, in August of the same year, three shares more ; that the certificates of said stock, sealed up in an envelope, endorsed "The property of Joshua Deverson," was placed by Joshua Deverson, jr., the son of the testator, in the custody of the Bank where it still remains ; that the testator left six children, all of whom died before the widow, except the complainant Mehitable ; and all died without children but the said Joshua Deverson, jr., who left two children Harriet, Dennett, and William H. Deverson. And it appears that the

said Joshua Deverson, jr., during his life-time, paid some taxes on said bank shares, and otherwise incurred expenses in regard to them, that have not been repaid.

One question arising on this statement of the case is, whether the representatives of Joshua Deverson, jr., are entitled to a share of this bank stock; and this must turn upon the construction of the term, "to be equally divided among my living children"—whether the term "*living children*," means those living at the testator's death, or at the time of the distribution. The term, "*living*," as here used, is equivalent to the term, "*surviving*," and denotes a bequest to the children of the testator or the survivor of them. To what period this survivorship shall be referred is the question.

Formerly, unless a different intention was specially manifested by the will, the survivorship was referred to the death of the testator, even although the division was not to take place until after the determination of a life estate; but now the doctrine seems to be established both in the English and American courts, that, unless a contrary intent be manifested in the will, the survivorship is to be referred to the time of division or distribution, whether that be at the death of the testator, or at a subsequent period, such as the termination of an estate for life.

This subject is carefully examined in 2 Jar. on Wills, 632 to 658, and both the earlier and later authorities considered; and the conclusion reached is stated on page 650, as follows: "In this state of the recent authorities, one scarcely need hesitate to affirm, that the rule which reads a gift to survivors simply as applying to objects living at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred; and that where such gift is preceded by a gift or other prior intent, it takes effect in favor of those who survive the period of distribution, and of those only."

Upon the examination of these authorities, as well as many subsequent cases, both English and American, we are satisfied, that, both upon principle and authority, the doctrine stated by Mr. Jarman is correct. Indeed, the opposite doctrine, originating, as it would seem, in the idea that indefinite survivorship was inconsistent with the words of "severance," creating a tenancy in common, had engrafted upon it, from time to time, so many qualifications and exceptions, and of such nature, as to indicate the absence of a solid foundation for the rule itself. Among those qualifications and exceptions were these: In the case of a gift to one for life, and then to the surviving children of the testator, or of another; here, although the legacy was held to vest in the children living at the death of the testator, yet children born or *in esse* before the death of the tenant for life, would be let in. *Congreve* v. *Congreve*, 1 Brown's Ch. Rep. 530, and notes; *Andrews* v. *Partington*, 3 Brown's Ch. Rep., Perkins Ed. 404, note; Roper on Legacies, 71, and *seq.* So, when the gift was to the children of a person named, to be paid on the youngest reaching the age of twenty-one years, children *in esse* at the period prescribed for the distribution, would be let in, although they came *in esse* after the death of the testator. These cases show, that,

in respect to after born children, the survivorship was referred to the period of distribution and not to the death of the testator.

Another qualification of the rule was in cases where the subject of the gift was not in existence at the death of the testator, in the *form* in which it was to be distributed; as in the case of a devise of land to a tenant for life, which, after his death, was to be sold, and the avails distributed in money among the children, or the survivors of them. Here it was held, that there was no gift till the distribution, which was to be among the survivors, and *that* excluded the idea of taking *in* persons who were dead. *Brograve* v. *Winder*, 2 Ves. Jr. 634, and cases cited in 2 Jar. on Wills, 641, and *al.* As the same principle was applied on appeal to the House of Lords from the decision of the case of *Bindon* v. *Earl of Suffolk*, 1 P. Wms. 96. That case was a bequest to the testator's grand-children, of a debt of £20,000, due him from the crown, and if any died, his share to go to the survivor of them. It was held, that the words of survivorship referred, not to the death of the testator, but the time of receiving the money, which was a debt due from the crown of rather a desperate nature.

These qualifications of the old rule, it must be confessed, opened a wide door for the overthrow of the rule itself; and, accordingly, in the case of *Cripps* v. *Wolcott*, 4 Madd. Rep. 11, it was held to be settled, that, if a legacy be given to two or more persons to be equally divided between them, or to the survivor of them, and there be no special intent to be found in the will, the survivorship is to be referred to the period of the division, whether that be at the death of the testator, or of the tenant for life. And the principle of this case has been followed in England by so many cases, that it must now be considered as established there, at least, in respect to bequests of personal estate.

Many of these cases are cited in 2 Jar. on Wills, 648 to 652; see also note a. to *Andrews* v. *Partington*, 3 Brown's Ch. Rep. 404; *Hill* v. *Chapman*, 1 Sumner's Ves. 409; 6 Greenl. Cruis. Dig. 340, note, tit. 38, ch. 15, sec. 25; Roper on Legacies, Ed. of 1828, 334 to 357; Williams on Executors, Ed. of 1859, p. 1319. In addition to these authorities are *Ive* v. *King*, 11 Eng. Law & Equity, 216; *Neathway* v. *Reed*, 17 Eng. Law & Eq. 150, where there was a gift "to my sister C. N.'s surviving children of £30 each"; and then, farther, "I give and bequeath unto my sister C. N. the interest on my funded property for and during her natural life, and after her decease such property to be equally divided between the surviving children." One of C. N.'s children, who survived the testatrix, died in C. N.'s life-time, and it was held, that, the words, " surviving children," in the first gift which took effect at death of testator, meant *surviving the testator*; but in the other gift, they meant surviving C. N., the tenant for life. Lord Cranworth, in delivering the opinion, says: "It is a very safe rule, to say, that, when a testator gives property to a person for life, and, after his death to his surviving children, the meaning of that must be, the children that survive when the interest that was given the tenant for life becomes exhausted by the death of the party." This decision was in 1853. Of a similar character is *Vorley* v. *Richardson*, 35 Eng. Law & Eq. 402.

In the American courts, the doctrine of *Cripps* v. *Wolcott* has been adopted in *Biddle* v. *Hoyt*, 1 Jones Eq. N. C. 334; *Hilliard* v. *Kearney*, 1 Busbee's Rep. N. C. 221; *Knight* v. *Knight*, 3 Jones Eq. N. C. 169; *Schoppert* v. *Gillam*, 6 Rich. S. C. Eq. Rep. 83; *Wessenger* v. *Hunt*, 9 Rich. Eq. 459; *Hughes* v. *Hughes*, 12 B. Mon. 115; *Wren* v. *Hynes* 2 Metcalf Rep. Ky. 129; *Holcomb* v. *Lake*, 4 Zabr. N. J. 613, and cases cited; *Williamson* v. *Chamberlain*, 2 Stockton, N. J. 373; *Siddell* v. *Wells & al.*, Spencer, 223; *Lessees of Westbrook* v. *Romeyn*, Baldwin Rep. 196; see also *Jenkins* v. *Freyer*, 4 Paige, Ch. Rep. 53.    These cases fully maintain the doctrine of the later English cases, and some of them apply it to a devise of land.    Among such, is the case of *Siddell* v. *Wells & al.*, Spencer, N. J. Rep., where there is an able opinion by Judge Hornblower.

The result, then, of the authorities, in our opinion, is, that, if there be a bequest to one for life, and then to the children of the testator or the survivors of them, those children will take, who, at the death of the tenant for life, answer the description in the will, to the exclusion of the representatives of those who are then dead.    This, we think, is the rule when the bequest is in these terms and nothing more; subject, of course, to be controlled by a manifestation, in the will, of a different intention.

The term, *living children*, necessarily implies a gift to the surviving children to the exclusion of those who are deceased; and if the survivorship is referred to the time of distribution it must exclude the representatives of those who, living at the death of the testator, have died during the life-time of the tenant for life; just the same as in case the survivorship be referred to the death of the testator, those who died after the making of the will and during his life are excluded.    In both cases it may be, and is, urged, that the descendants of deceased children ought not to be excluded; but it is well settled, that, under a bequest to children, the grand-children will not in general be entitled, unless there were and could be no children, or it clearly appears that the term, *children*, was used as synonymous with *issue*.    2 Jar. on Wills, 50, 70; *Mowatt* v. *Carow & al.*, 7 Paige, Ch. Rep. 328; *Radcliffe* v. *Buckley*, 10 Ves. 195, and notes.

In the case before us, the fund, after the decease of the widow, was to be divided equally among the testator's *living children*, and we think that the natural and obvious meaning of the term, as well as the established rules of law, gives it to the children living at the time of distribution, contradistinction to those who are dead.    To include the children of a son, deceased before the death of the tenant for life, would be making the will speak language which was not used by the testator, and not implied by the general tenor of the instrument.

The remaining question is, whether the stock in the Rockingham Bank is to be regarded as part of the $1000 bequeathed to the wife for life, and then to the living children of the testator.    Upon this point it does not appear that this stock was ever set apart for that purpose; but it stands, for aught that is seen, merely as part of Joshua Deverson's estate in the hands of his administratrix at the time of her decease; and,

although there may be reason to suppose that there is no other claim upon this fund in behalf of creditors or other legatees, or for expenses of administration, yet the court cannot assume it to be so. Nor can the court make a decree in this case, unless the administrator of the estate of Joshua Deverson be a party. If, then, no administrator *de bonis non* has been appointed, it would be necessary that it be done and such administrator made a party to the suit; although, the rights of plaintiff having been determined, the parties can probably adjust the remaining questions among themselves.